UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x Docket No.
SERGEI A. KRAVTCHOUK,

                Plaintiff,

    -against-

THE CITY OF NEW YORK, NYC POLICE       JURY TRIAL
OFFICER DAVID RAMOS (#947831),  NYC     DEMANDED
POLICE OFFICER R. BANGALI (#936168),
NYPD POLICE COMMISSIONER WILLIAM
J. BRATTON, THE STATE OF NEW YORK,
THE NEW YORK STATE OFFICE OF
COURT ADMINISTRATION, and NYS DMV
EXECUTIVE DEPUTY COMMISSIONER
THERESA L. EGAN,

                Defendants.
------------------------------------------------------------------------------x

    Plaintiff, SERGEI A. KRAVTCHOUK, by his attorney, Ralph G. Reiser, Esq.,

complaining of the defendants alleges upon information and belief, as follows:

## NATURE OF THE ACTION

    1. This is an action on behalf SERGEI A. KRAVTCHOUK, who is profoundly

deaf and communicates through American Sign Language. M. Kravtchouk was initially arrested

on charges of Driving While Intoxicated by New York City Police Officer David Ramos, an

employee of the defendant, The City of New York.  From the time of his arrest on November 23,

2014 to the time of his court appearance for arraignment, Mr. Kravtchouk was never provided

with a qualified sign language interpreter, despite repeated requests and demands for the

assistance of a sign language interpreter.  Defendants City of New York and Police Officer David

Ramos and other members of the defendant City's Police Department pretended to satisfy Mr.

Kravtchouk's demands for a sign language interpreter by bringing in defendant Police Officer

Bangali to provide sign language interpreting services and to induce Mr. Kravtchouk to submit to

a breathalyser test despite Officer Bangali's incompetence and clear conflict of interest in serving

as a sign language interpreter. When their attempts to induce Mr. Kravtchouk to submit to a

Breathalyzer test failed, the defendant City's Police Officers decided to "set it up as a refusal"

causing the immediate suspension and threatened revocation of Mr. Kravtchouk's driver's

license. Plaintiff's confinement prior to arraignment was extended and plaintiff's arraignment

and release were delayed because of the failure of the defendants State of New York and its

Office of Court Administration to have a sign language interpreter available at the Court at such

time as Mr. Kravtchouk should have been arraigned. Subsequently, Mr. Kravtchouk declined

prosecution requests that he plead to the criminal charge of Driving While Impaired and

indicated that he intended to challenge the validity of his arrest and the charges on grounds that

his civil rights had been violated and he had been discriminated against on the basis of his

disability by the defendant City and its Police Officers. Upon learning of this, defendant Police

Officer David Ramos, on or about May 27, 2015, some 6 months after he initially arrested Mr.

Kravtchouk undertook an independent investigation of Mr. Kravtchouk's Motor Vehicle

Department records, observed what he believed to be an inaccurate statement regarding Mr.

Kravtchouk's deafness on his license renewal application and thereupon falsely arrested Mr.

Kravtchouk on charges of Offering a False Instrument for Filing and Attempted Offering a False

Instrument for Filing. Despite assurances that he would be brought to court for arraignment upon

surrendering to defendant Ramos in the morning of May 27, 2015, defendants delayed Mr.

Kravtchouk's arraignment until the next day, causing Mr. Kravtchouk to be held overnight.

Once again, Mr. Kravtchouk was denied the assistance of a sign language interpreter by

defendants Ramos and the City of New York's Police Department from the time of his arrest

until he was finally brought to court for arraignment. So too, Mr. Kravtchouk's arraignment was

again further delayed due to the failure of the defendants State of New York and its Office of

Court Administration to timely provide a sign language interpreter for Mr. Kravtchouk.

Ultimately, the District Attorney consented to the dismissal of the "false instrument" charges

against Mr. Kravtchouk, thereby establishing the malicious nature of that prosecution, which was

initiated by defendant Ramos in retaliation for Mr. Kravtchouk's assertion of his rights as a deaf

individual under the Americans with Disabilities Act.  Upon information and belief, defendant

Ramos' retaliatory conduct continued as he reported to the DMV that Mr. Kravtchouk was a

medically unqualified driver causing the DMV to demand medical that Mr. Kravtchouk provide

medical proof of his fitness to drive as well as to submit to a DMV road test in order to keep his

license.  The State of New York, through its Department of Motor Vehicles then discriminated

against Mr. Kravtchouk by refusing to provide him with a sign language interpreter for the road

test, despite his request for same, and threatening to suspend his drivers license if he did not

appear for the test without an interpreter. After Mr. Kravtchouk submitted Notices of Claims to

the City of New York with respect to his false arrest claim and malicious prosecution claim, the

attorney appointed by the defendant City of New York to conduct a 50-h hearing discriminated

against Mr. Kravtchouk by refusing to proceed with the hearing when she refused to conduct the

hearing through the interpreter chosen by the defendant City itself. This Complaint states causes

of action under federal, state, and city laws for violations of civil rights and discrimination on the

basis of disability. It also states causes of action in tort under common law.

JURISDICTION

2.  Jurisdiction is specifically conferred on the United States District Court by 28

U.S.C. 1331, this being an action arising under the Constitution and Federal Law and the Fifth,

Sixth, and Fourteenth Amendments to the United States Constitution.  The Federal Statutes

under which the claims arise are the Americans with Disabilities Act, ("ADA"), 42 U.S.C. 12-101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. 794, this being an action to recover for unlawful discriminatory practices on the basis of disability as well as 28 U.S.C. 1343(a)(3), this being an action to redress the deprivation, under color of statute, ordinance, rule, regulation, custom and/or usage, of rights, privileges and immunities secured to plaintiff by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and by 42 U.S.C. 1983 and 1985. Pursuant to 28 U.S.C. 1367 pendent jurisdiction and supplementary jurisdiction are asserted over plaintiff's state law claims pursuant to the New York State Human Rights Law, (NYS Executive Law-Article 15), and the New York City Human Rights Law, Administrative Code 8-102 et seq, and the common law.

3. The amount in controversy exceeds $150,000.

4. Venue is laid within the United States District Court for the Eastern District of New York in that one or more of the defendants, including the defendant City of New York, reside in said district. 28 U.S.C. 1391 (b) (1).

## PARTIES

5. At all times hereinafter mentioned, Plaintiff Sergei A. Kravtchouk was and still is a resident of the County of Saratoga, State of New York.

6. At all times hereinafter mentioned, Defendant The City of New York was and still is a duly incorporated municipality of the State of New York, and a resident of all five boroughs and counties of the City Of New York.

7. At all times hereinafter mentioned, the Defendant City of New York owned, operated, maintained an controlled a police department known as the New York City Police Department (NYPD) which is a department and/or agency of the defendant City of New York.

8.  Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer David Ramos was a resident of the County of Richmond, City and State of New York.

9.  Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer David Ramos was a Police Officer employed by the NYPD and assigned shield number 947831.  He is sued in his individual and official capacities.

10.  Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer R. Bangali was a resident of the County of Bronx, City and State of New York.

11.  Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer R. Bangali was a Police Officer employed by the NYPD and assigned shield number 936168.  He is sued in his individual and official capacities.

12.  Upon information and belief, at all times hereinafter mentioned Defendant New York City Police Commissioner William J. Bratton ("the Police Commissioner") was and is a resident of the County of New York, City and State of New York,

13.  Defendant New York City Police Commissioner William J. Bratton ("the Police Commissioner") was and is, at all relevant times herein, the Commissioner of the NYPD and, as such, was and is a policy maker with respect to the training and supervision of NYPD police officers, the procedures to be followed and the accommodations to be provided by NYPD Police Officers in dealing with deaf individuals, the condition and staffing of Police Precinct jails and holding pen facilities and the supplying of assistive devices for the deaf in such facilities and the training, supervision, and discipline of NYPD Police Officers. The Commissioner is sued in his individual and official capacities.

14.  At all times herein mentioned, the defendant The State of New York was a state government established and existing under the Constitutions and laws of the United States and New York State and a resident of all counties of the State of New York.

15.  At all times herein mentioned the defendant New York State Office of Court Administration (OCA) was an Office/Department/Bureau/Division of the defendant State of New York and a resident of all counties established and charged with the ownership, operation, maintenance, control and policy making of all of the Courts in the State of New York and its Unified Court System, including the New York County Criminal Court.

16.  At all times hereinafter mentioned the defendant The State of New York owned, operated, maintained, controlled a department known as the New York State Department of Motor Vehicles charged with, among other things, the testing, regulation and supervision of individuals applying for and to whom drivers' licenses have been issued by the State of New York.

17.  Upon information and belief, at all times hereinafter mentioned Defendant NY DMV Executive Deputy Commissioner Theresa L. Egan was and is a resident of the County of Albany, State of New York,

18.  Defendant NY DMV Executive Deputy Commissioner Theresa L.  Egan ("the DMV Commissioner") was and is, at all relevant times herein, the Executive Deputy Commissioner of the New York State Department of Motor Vehicles and, as such, was and is a policy maker with respect to the training and supervision of DMV officials and staffers, the procedures to be followed and the accommodations to be provided by the DMV and its officials and staffers in dealing with deaf individuals, and the supplying of assistive devices for deaf individuals engaged in business with the DMV. The Executive Deputy Commissioner is sued in

her individual and official capacities.

## FACTUAL ALLEGATIONS

19. Plaintiff Sergei A. Kravtchouk is a deaf, speech impaired individual who communicates through American Sign Language ("ASL").  As such, he is a qualified individual with a disability as defined by both, the ADA, 42 U.S.C. 12102(2) and the Rehabilitation Act, 29 U.S.C 704 AND 705 and he further qualifies as a person with a disability and/or disabled person under the New York State Human Rights Law, (Executive Law Sec. 292) and the New York City Human Rights Law, (Administrative Code Sec.8-102).

20. On November 23, 2014, Plaintiff was arrested by defendant Police Officer David Ramos of the New York City Police Department and charged with Driving While Intoxicated.

21. When defendant  Officer David Ramos approached Plaintiff at the time and place of the traffic stop and arrest and attempted to communicate with him, Plaintiff repeatedly informed defendant Ramos that he is deaf and repeatedly requested a sign language interpreter because he is Deaf, but his requests were denied.

22. Since plaintiff is profoundly deaf, he was unable to effectively communicate with defendant Ramos and the other police officers who subsequently became involved without the use of a Sign Language Interpreter. Plaintiff was denied the opportunity to be provided with reasonable accommodations and effective communication, the type of communication which a hearing individual in plaintiff's position would have been able to engage in.

23. Due to the lack of effective communication, defendant Ramos was unable to and failed to inform plaintiff of his Miranda rights and unable to instruct plaintiff in regard to the field tests the officer wanted plaintiff to submit to.  He was compelled to submit to a portable

breath test (PBT) without being properly and adequately advised as to how to do so, leading to an increased likelihood that the results were inaccurate.

24. Plaintiff, who was deemed innocent until proven guilty and entitled to be treated as such, was then taken to the NYPD's 28th precinct and was put in a cell. The cell conditions were filthy, disgusting and unfit for human habitation.

25. While in the cell at the 28th precinct plaintiff was not advised of his Miranda rights, was not advised of his right to have the police officer make a telephone call on his behalf and was ridiculed and denied assistance when he requested access to a phone.

26. Plaintiff was also not advised that he had a right to utilize a Teletypewriter for the Deaf (TTY) which is required to be available in every precinct and with which he could have contacted an attorney, and was thereby deprived of his right to counsel.

27. Plaintiff was distressed for hours because he did not know how long she would be there and how he would be dealt with and when, if ever, he would be brought before a judge.

28. While still at the 28th precinct, Plaintiff was removed from his cell and brought to a testing room for purposes of having him submit to a blood-alcohol test, a Breathalyzer.

29. Unable to communicate with plaintiff, the police officers, including defendant Ramos, sought to have him read a DWI advisory which is expressly required to be read aloud to the arrested suspect, and which, among other things, is intended to warn the suspect that if he refuses to submit to the test, his license will be revoked for a year.  Instead, in direct violation of the instructions on the form, the police officers attempted to have plaintiff read the instructions himself.  These instructions are required to be read aloud to the suspect by the police officer as it

is recognized that a purportedly intoxicated individual will be unable to read and comprehend the information on his own.  Yet, despite having charged plaintiff with being intoxicated, defendant Ramos sought to have him read the required advisory himself.

30.  Plaintiff repeatedly informed the police officers that he wanted to be provided with an interpreter and wanted to communicate with an attorney and his requests were denied. Plaintiff was returned to his cell.

31.  Plaintiff was eventually returned to the testing area at which time an additional police officer, defendant R. Bangali was present.

32.  Defendant Officer Bangali has a limited and inferior knowledge of some sign language and thereupon purported to serve in the role of a qualified sign language interpreter, despite his lack of skill in sign and despite his conflict of interest as a police officer in the role of an individual who is supposed to impartially assist a deaf person in communicating.

33.  Plaintiff thereupon informed defendant Officer Bangali that he wanted an attorney, in response to which Officer Bengali falsely and incorrectly informed plaintiff that he was not entitled to an attorney and could only have an attorney in court.

34.  When plaintiff informed defendant Officer Bangali that he was not a proper interpreter, and that plaintiff wanted a qualified and impartial interpreter, defendant Officer Bangali falsely informed plaintiff that there were no interpreters available.  This statement was false because pursuant to NYPD internal orders, a procedure is to be followed to secure a qualified sign language interpreter for deaf suspects and said procedure was not followed.

35.  Defendant Ramos thereupon began reading aloud the required advisory which was to be interpreted for the plaintiff in sign by defendant Bangali.  As a NYPD videotape of this event reveals, while defendant Ramos read the advisory aloud, defendant Bangali stood there

looking at plaintiff but without communicating in sign what was being said.

36.  Plaintiff several times inquired of Officer Bangali as to why he was not signing what was being said and defendant Officer responded with the gesture for "wait" and failed to even attempt to sign what was being said.

37.  When Plaintiff continued to challenge defendant Bangali's ability to communicate effectively and impartially in sign, defendant Bangali expressly stated to plaintiff in sign, "I am not an interpreter."

38.  Plaintiff repeatedly told Officer Bangali in sign that what was going on was against the law and repeatedly signed to defendant Bangali "law" "ADA" "ADA" "ADA" in reference to the Americans with Disabilities Act.  These statements by plaintiff were ignored by the defendant officers.

39.  When plaintiff responded to further requests that he submit to the Breathalyzer test by stating that he would do so when an interpreter was provided, one of the NYPD Officers present stated to the others "Set it up as a Refusal."

40.  Defendant Ramos thereupon completed the NYPD Refusal Report and falsely stated therein that plaintiff had refused to submit to the test in the presence of a sign interpreter.

41.  Defendant Ramos' "Refusal Report" was false because not only had plaintiff not refused to submit to the test, but defendant Bangali had expressly stated to plaintiff that he was not an interpreter thus belying defendant Ramos' representation that there had been a refusal in the presence of a sign language interpreter.

42.  Defendant Ramos' falsified "Refusal Report" was thereafter filed with the Court and utilized during arraignment as a basis for the Court to immediately suspend and take possession of plaintiff's drivers license.

43. In filing his falsified "Refusal Report" with the Manhattan Criminal Court defendant Ramos engaged in the criminal act of offering a false instrument for filing.

44. Following the aborted attempts to induce plaintiff to submit to a Breathalyzer in the absence of a qualified sign language interpreter, plaintiff was returned to his cell at the 28th precinct.   At no time during the remainder of his detention at the 28th precinct was plaintiff provided with a sign language interpreter and his requests for assistance with a phone call to call an attorney were denied and he was never offered use of the TTY required to be available at every precinct.

45. Thereafter without being informed where he was being taken, plaintiff was removed from his cell and transported to the cells at Manhattan Central Booking.

46. Defendant Ramos and the NYPD delayed and failed to timely inform the Manhattan District Attorney's office and the Manhattan Criminal Court that a deaf defendant was being brought to Court for arraignment.

47. Upon information and belief, The Manhattan Criminal Court does not maintain a resource of sign language interpreters on hand so as to assure that a deaf defendant's arraignment is not delayed due to the absence of a sign language interpreter when the deaf defendant is to be arraigned.

48. As a result of these failures on the part of the defendants Ramos, NYPD, and the New York State's Office of Court Administration, plaintiff's arraignment was delayed until a sign language interpreter was contacted, scheduled and until said interpreter arrived at Court. Thus, plaintiff remained confined while hearing defendants who had been arrested and brought to Central Booking at the same time or subsequent to plaintiff's arrest and arrival were arraigned and released.

49. In reliance upon the falsified "Refusal Report" filed with the court by defendant Ramos, the Judge before whom plaintiff was arraigned immediately suspended and took possession of plaintiff's drivers license.

50. Upon information and belief. The policy of the Manhattan District attorney's office during the time that plaintiff's DWI case was being prosecuted, was to offer first time DWI offenders who were not involved in accidents causing injury, the opportunity to plead to a non-criminal charge of Driving While Impaired, but only if said defendant had not refused the Breathalyzer test.

51. Upon information and belief, in reliance upon the falsified "Refusal Report" filed with the court by defendant Ramos, the Manhattan District Attorney's office declined to allow plaintiff to plead to the reduced non-criminal charge of Driving While Ability Impaired (DWAI) and insisted upon a plea to the criminal charge of Driving While Intoxicated, thereby prolonging the resolution of the case.

52. Plaintiff refused to plead guilty to the criminal DWI charge and insisted that he would defend the case and assert the discriminatory conduct to which he had been subjected by defendant Ramos and the NYPD in disputing the criminal charge.

53. Upon information and belief, upon learning of plaintiff's intent to dispute the criminal DWI charge and rely upon the discriminatory conduct to which he had been subjected in defending against the charges, defendant Ramos determined to retaliate against plaintiff.

54. Upon information and belief, some six months after the DWI arrest, defendant Ramos, in recognition of plaintiff's deafness, took the unprecedented action of conducting an independent investigation of plaintiff's DMV records.

55. In the course of his investigation, defendant Ramos obtained and reviewed the

last application submitted by plaintiff to the DMV for renewal of his license and incorrectly

concluded that in responding to a question regarding his deafness, plaintiff had falsely stated that

he did not have a hearing impairment.

56.   In actuality, at the time he submitted the renewal application, Mr. Kravtchouk

had gone personally to a DMV Office which had no interpreter available for him.  In the absence

of an interpreter, plaintiff sought the assistance of a DMV clerk/examiner, in formed the

clerk/examiner that he was deaf, inquired among other things, as to which box to check in regard

to his deafness and completed the application accordingly.  The clerk/examiner then reviewed

and accepted the application and issued plaintiff a renewal license.

57.   Plaintiff's response to the question regarding deafness was accurate in that

while he is deaf, his deafness had not developed subsequent to the prior time that  he had

renewed his license.

58.   Defendant Ramos, without knowledge of the facts and circumstances

surrounding the completion and submission of plaintiff's license renewal application, and

without obtaining a warrant, took it upon himself to commence a criminal prosecution of plaintiff

on charges of Offering a False Instrument for Filing and Attempted Offering of a False

Instrument for Filing.

59.   At an appearance in connection with his DWI case, plaintiff was informed of

his impending arrest on the new "false instrument" charges and was directed to surrender to

defendant Police Officer David Ramos at an NYPD precinct in Manhattan on May 27, 2015.

60.   Plaintiff was informed that he should surrender to Officer Ramos early in the

morning so that he could be arraigned and released that same day.

61.   Plaintiff, who resides in upstate Saratoga, nevertheless timely appeared and

surrendered to Police Officer Ramos early in the morning of May 27, 2015.

62. Despite knowing full well from his prior dealings with plaintiff wherein plaintiff constantly requested the assistance of a sign language interpreter, defendant Ramos had done nothing to arrange for the presence of a sign language interpreter at the time and place of plaintiff's surrender.

63. Plaintiff was thereupon once again deprived of the assistance of a sign language interpreter from the time of his arrest until the time of his arraignment.

64. Despite the assurance that plaintiff would be arraigned promptly after his arrest and released the same day, defendant Ramos, in further retaliation against plaintiff, delayed the processing of plaintiff's arrest and delayed notification to the District Attorney and Court that a deaf defendant would be produced for arraignment and thereupon delayed plaintiff's arraignment until the following day, causing plaintiff to be detained overnight in jail.

65. Once again, defendant was confined overnight in a filthy, uninhabitable cell and was again deprived of all accommodations to which he was entitled, including a sign language interpreter, the use of a TTY and a police officer's assistance in making a phone call to inform his family that he would not be returning home that same day as expected.

66. Plaintiff was once again subjected to severe emotional distress during his arrest and confinement due to the discriminatory conduct he was being subjected to on the basis of his deafness and the refusal to grant him the reasonable accommodations to which he was entitled.

67. At the time that defendant Ramos commenced the criminal prosecution in Manhattan Criminal Court on the "false instrument" charges without a warrant, he knew or should have known that he had not observed the alleged offense when it allegedly occurred and

was without knowledge of the facts and circumstances of that event, that the alleged offense did not take place in New York County, and that the statute of limitation on the charges of filing and attempted filing of a false instrument had expired.

68. The New York County District Attorney's office, when subsequently confronted with a motion to dismiss the false instrument charges, voluntarily elected to consent to dismissal of the charges without the motion being submitted to the Court and at that time further agreed to accept a plea to a reduced charge of DWAI on the DWI charge.

69. Officer Ramos, however, was not dissuaded from further retaliation. Instead, upon information and belief, some time prior to September 28, 2015 defendant Ramos made a report to the NYS DMV to the effect that plaintiff's driving patterns and/or medical condition of deafness were interfering with his safe operation of a motor vehicle.

70. Upon information and belief, at the time he made this report, to the DMV, defendant Ramos had only observed plaintiff operating a motor vehicle on the one occasion when he believed plaintiff to be driving while intoxicated and had no basis to allege that plaintiff's driving patterns interfered with his safe operation of a motor vehicle.

71. Upon information and belief, at the time he made this report, to the DMV, defendant Ramos was motivated by plaintiff's deafness in reporting to the DMV that plaintiff's deafness interfered with his safe operation of a motor vehicle.

72. Upon receipt of the aforesaid report, the DMV issued notice to plaintiff dated September 28, 2015, compelling him to submit medical proof of his ability to safely operate a motor vehicle and compelling him to submit to a DMV road test.

73. Plaintiff, through his counsel, requested that the DMV provide a sign language interpreter to plaintiff for his DMV appointment of January 28, 2016 wherein he would

be required to take a road test involving compliance with verbal directives of the examiner.  The DMV refused to provide a sign language interpreter for the appointment.

74.  Plaintiff submitted to the road test on January 28, 2016 and passed without any difficulty in properly and safely operating a motor vehicle.

75.  Plaintiff thereafter appeared for a Refusal Hearing before an Administrative Law Judge (ALJ) to challenge the "Refusal Report" made by defendant Ramos at the time of the DWI arrest.

76.  Defendant Ramos had been noticed to appear at the Refusal Hearing and failed to appear.

77.  The DMV ALJ insisted upon proceeding with the refusal hearing notwithstanding defendant Officer Ramos' failure to appear and, ver objection, introduced into evidence the falsified "Refusal Report" made and submitted by defendant Ramos, thereby requiring plaintiff to put in a defense at said hearing..

78.  In support of his defense, plaintiff offered in evidence the NYPD video of the Breathalyzer testing sessions to which plaintiff was subjected by the NYPD and, in particular, the conduct of defendants Ramos and Bangali.

79.  Upon viewing such video, the DMV ALJ promptly dismissed the refusal proceeding.

80.  Prior to the commencement of this action and in connection with plaintiff's state and city law claims for false arrest and malicious prosecution against defendant The City of New York, plaintiff filed Notices of Claims with the Office of the New York City Comptroller.

81.  Upon demands served by the Office of the Comptroller pursuant to General Municipal Law Section 50-h requiring plaintiff to submit to a hearing concerning plaintiffs

claims, plaintiff traveled from Saratoga, New York to the Manhattan office of the Billig Law Firm, the attorney appointed by the defendant City to conduct said hearing.

82. The defendant City and/or its agent, attorney Billig secured a sign language interpreter of their own choosing to provide sign language interpreting services for plaintiff during said hearing.

83. Prior to the commencement of the hearing, attorney Billig engaged in a dispute with the City's chosen interpreter who declined to comply with attorney Billig's inappropriate demands that he not communicate with plaintiff prior to the hearing and that he not interpret for the plaintiff things being said prior to the hearing.

84. As a result of the dispute between attorney Billig and the City's chosen interpreter, attorney Billig refused to proceed with the hearing utilizing the services of said interpreter who thereupon left the Billig office.

85. Despite keeping plaintiff and his attorney and the court reporter waiting for several hours while she attempted to locate another interpreter, attorney Billig was unable to obtain the services of a sign language interpreter and was failed to proceed with the hearing.

86. The defendant City, by its agent The Billig Law Firm thereby discriminated against plaintiff in interfering with the sign language interpreter's performance of his duties with respect to plaintiff.

87. The defendant City has thereby waived any rights it had or may have had to conduct said hearing.

AS AND FOR A FIRST CAUSE OF ACTION

VIOLATION OF THE REHABILITATION ACT

(NYC, NYPD, POLICE COMMISSIONER & ALL POLICE OFFICERS)

(COMPENSATORY & PUNITIVE DAMAGES)

88.  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

89.  At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 was in full force and effect and applied to the Defendants in their dealings with plaintiff.

90.  At all times relevant to this action, the  regulations implementing Section 504 of the Rehabilitation Act, 28 CFR 45.501 et seq. and 28 CFR 42.106 - 42.110  were in full force and effect and applied to the Defendants in their dealings with plaintiff.

91.  At all times relevant to this action, Plaintiff was and is a "handicapped person" within the meaning of the Rehabilitation Act including its regulations at 28 C.F.R. Part 45.

92.  At all times relevant to this action, Plaintiff was and is an "otherwise qualified individual" within the meaning of the Rehabilitation Act and the regulations promulgated thereunder.

93.  At all times relevant to this action, Defendant City of New York and its Police Department were recipients of federal funds within the meaning of the Rehabilitation Act.

94.  Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance".

95.  Under the federal regulations promulgated pursuant to the Rehabilitation Act,

a recipient of federal assistance must provide effective communication by means of auxiliary aids and services including qualified sign language interpreters and TDDs, to deaf individuals.

96.    Defendants' failure and refusal to ensure effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against Plaintiff on the basis of his disability in violation of Section 504 of the Rehabilitation Act.

97.  Defendants' failure to provide effective communication with and for Plaintiff as hereinbefore alleged in violation of their obligations under the Rehabilitation Act has directly injured, and continues to injure, Plaintiff who was required to undergo medical treatment for the emotional distress he experienced.

98.  Defendants' violations of the Rehabilitation Act mentioned above deprived plaintiff of the accommodations to which he was entitled and were intentional and the product of defendants' deliberate indifference to the strong likelihood that their policies and conduct would likely result in a violation of federally protected rights.

99.  The intentional nature of the violations of the Rehabilitation act on the part of the defendant City, the NYPD and its commissioner, and the defendant police officers, and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the Rehabilitation Act of 1973, and its regulations as well as policies and procedures promulgated by the Police Commissioner or his authorized representatives.

100.  Defendants violated the Rehabilitation Act, its regulations in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services, including, but not limited to, the provision of qualified sign language interpreters and

TDD's; in failing to provide qualified individuals with hearing impairments and plaintiff in particular, with the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters and TDDs in a situation where the NYPD would allow a person access to a telephone; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign language interpreter within a reasonable time after the request was made; in failing to assure that sign language services would be available 24 hours a day; in failing to give primary consideration to the requests of qualified individuals with hearing impairments, and plaintiff in particular, in determining what type of auxiliary aid or service is necessary; in failing to provide plaintiff with notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to copies of the publication "The Americans with Disabilities Act What You Should Know;" in failing to provide plaintiff with a sign language interpreter who was able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, in failing to provide plaintiff with an interpreter able to sign to the deaf individual, and plaintiff in particular, or interpret orally to the person what was being said by the hearing person and to voice to the hearing person what was being signed or said by the deaf individual, and plaintiff in particular. In failing to provide plaintiff with an interpreter able to interpret in the language the plaintiff uses; and in providing plaintiff with an unskilled, unqualified and non-impartial interpreter who was not a good communications match for the

plaintiff; in failing to provide plaintiff with communication that was as effective as communication with others who are not deaf or hearing impaired, in falsely reporting that plaintiff had refused to submit to Breathalyzer testing, and in falsely informing plaintiff that he was not entitled to counsel during his arrest and testing.

101.  Such intent and deliberate indifference is also evidenced by the fact that the Rehabilitation Act has been in effect since 1973, more than 40 years prior to plaintiff's arrest and confinement and defendants have failed to bring themselves into compliance with the requirements of said statute and its applicable regulations despite that extraordinary passage of time.

102.  Defendants' violations of the Rehabilitation Act and its applicable regulations as hereinbefore alleged subjected plaintiff to discrimination on the basis of his disability and deprived plaintiff of his right to an equal opportunity to participate in or benefit from the services, programs, or activities of a the defendant public entities and directly caused Plaintiff to sustain past and continuing physical and emotional injuries requiring medical treatment. Plaintiff  has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

103.  Plaintiff has thereby been damaged by the violation of the Rehabilitation Act on the part of the defendants City of New York, the NYPD, its commissioner and the defendant police officers and demands compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

AS AND FOR A SECOND CAUSE OF ACTION

VIOLATION OF THE REHABILITATION ACT

(THE STATE OF NEW YORK, OCA & DMV)

(COMPENSATORY & PUNITIVE DAMAGES)

104.  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

105.  At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 was in full force and effect and applied to the Defendants in their dealings with plaintiff.

106.  At all times relevant to this action, the  regulations implementing Section 504 of the Rehabilitation Act, 28 CFR 45.501 et seq. and 28 CFR 42.106 - 42.110  were in full force and effect and applied to the Defendants in their dealings with plaintiff.

107.  At all times relevant to this action, Plaintiff was and is a "handicapped person" within the meaning of the Rehabilitation Act including its regulations at 28 C.F.R. Part 45.

108.  At all times relevant to this action, Plaintiff was and is an "otherwise qualified individual" within the meaning of the Rehabilitation Act and the regulations promulgated thereunder.

109.  At all times relevant to this action, Defendants The State of New York and the New York State Office of Court Administration and New York State Department of Motor Vehicles were recipients of federal funds within the meaning of the Rehabilitation Act.

110.  Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance".

111.  Under the federal regulations promulgated pursuant to the Rehabilitation Act, a recipient of federal assistance must provide effective communication by means of auxiliary aids and services including qualified sign language interpreters and TDDs, to deaf individuals.

112.  Defendants' failure and refusal to ensure effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against Plaintiff on the basis of her disability in violation of Section 504 of the Rehabilitation Act.

113.  Defendants' failure to provide effective communication with and for Plaintiff  as hereinbefore alleged in violation of their obligations under the Rehabilitation Act has directly injured, and continues to injure, Plaintiff who required medical treatment for his injuries.

114.  Defendants' violations of the Rehabilitation Act mentioned above deprived plaintiff of the accommodations to which he was entitled and were intentional and the product of defendants' deliberate indifference to the strong likelihood that their policies and conduct would likely result in a violation of federally protected rights.

115.  The intentional nature of the violations of the Rehabilitation act on the part of the defendant State and its OCA and DMV, and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the Rehabilitation Act and its regulations, which statute and regulations had been in effect since 1973, more than 40 years prior to plaintiff's appearances before the New York City Criminal Court and defendants have failed to bring themselves into compliance with the requirements of said statute and its applicable regulations despite that extraordinary passage of

time.

116.  Defendants violated the Rehabilitation Act, and its regulations in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services, including, but not limited to, the provision of qualified sign language interpreters; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign language interpreter within a reasonable time after the request was made; and in failing to assure that sign language services would be available 24 hours a day

117.  Defendants violations of the Rehabilitation Act and its applicable regulations as hereinbefore alleged subjected plaintiff to discrimination on the basis of his disability and deprived plaintiff of his right to an equal opportunity to participate in or benefit from the services, programs, or activities of a the defendant public entities and directly caused Plaintiff to sustain past and continuing physical and emotional injuries. Plaintiff  has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

118.  Plaintiff has thereby been damaged by the violation of the Rehabilitation Act on the part of the defendants The State of New York, its New York State Office of Court Administration and its Department of Motor Vehicles and demands compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

AS AND FOR A THIRD CAUSE OF ACTION

VIOLATION OF TITLE II OF THE ADA

(NYC, NYPD, POLICE COMMISSIONER and NYPD POLICE OFFICERS)

(COMPENSATORY & PUNITIVE DAMAGES)

119.  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

120.  At all times relevant to this action, the ADA, 42 U.S.C. §§ 12101, *et seq.* was in full force and effect and applied to defendants' conduct.

121.  At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 CFR 35, were in full force and effect and applied to the defendants' conduct.

122.  At all times relevant to this action, plaintiff  had a significant hearing and speech impairment and was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.. § 12102(2).

123.  At all times relevant to this action, the defendants City of New York and its Police Department were public entities within the meaning of Title II of the ADA.

124.  The objective of the ADA is to eliminate discrimination against individuals with disabilities.  Section 202 of the ADA, 42 U.S.C. § 12132 provides that "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity".

125.  Defendants' failure to provide effective communication with and for

Plaintiff in violation of their obligations under the Title II of the ADA has directly injured, and continues to injure, Plaintiff.

126.   Defendants' violations of Title II of the ADA deprived plaintiff of accommodations to which he was entitled to by law and intentionally and directly caused Plaintiff to sustain past and continuing physical and emotional injuries requiring medical treatment. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

127.   Defendants' violations of the ADA deprived plaintiff of the accommodations to which she was entitled and were intentional and the product of defendants' deliberate indifference to the strong likelihood that their policies and conduct would likely result in a violation of federally protected rights.

128.   Defendants violated Title II of the ADA, and its regulations in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services, including, but not limited to, the provision of qualified sign language interpreters and TDDs; in failing to provide qualified individuals with hearing impairments and plaintiff in particular, with the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters and TDDs in a situation where the NYPD would allow a person access to a telephone; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign

language interpreter within a reasonable time after the request was made; in failing to assure that sign language services would be available 24 hours a day; in failing to give primary consideration to the requests of qualified individuals with hearing impairments, and plaintiff in particular, in determining what type of auxiliary aid or service is necessary; in failing to provide plaintiff with notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to copies of the publication "The Americans with Disabilities Act What You Should Know;" in failing to provide plaintiff with a sign language interpreter who was able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, in failing to provide plaintiff with an interpreter able to sign to the deaf individual, and plaintiff in particular (or interpret orally to the person what was being said by the hearing person and to voice to the hearing person what was being signed or said by the deaf individual, and plaintiff in particular. In failing to provide plaintiff with an interpreter able to interpret in the language the plaintiff uses; and in providing plaintiff with an interpreter who was not a good communications match for the plaintiff; and in failing to provide plaintiff with communication that was as effective as communication with others who are not deaf or hearing impaired.

129.   Defendants' intent and deliberate indifference is evidenced by the fact that the ADA has been in effect since 1990, almost 24 years prior to plaintiff's arrest and confinement and defendants have failed to bring themselves into compliance with the requirements of said statute and its applicable regulations despite that extraordinary passage of time.

130.   Defendants violations of Title II of the ADA and its applicable regulations as hereinbefore alleged subjected plaintiff to discrimination on the basis of his disability and

deprived plaintiff of his right to an equal opportunity to participate in or benefit from the

services, programs, or activities of a the defendant hospital facilities and directly caused Plaintiff

to sustain past and continuing physical and emotional injuries. Plaintiff has suffered, is suffering,

and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of

discrimination.

     131.   Plaintiff has thereby been damaged by the violation of Title II of the ADA

on the part of the defendants City of New York, NYPD, the Police Commissioner and the

defendant Police Officers and demands compensatory damages in the sum of Five Million

Dollars and punitive damages in the sum of Five Million Dollars and together with attorneys'

fees and the costs and disbursements of this action.

AS AND FOR A FOURTH CAUSE OF ACTION

VIOLATION OF TITLE II OF THE ADA

(THE STATE OF NEW YORK, OCA & DMV)

(COMPENSATORY & PUNITIVE DAMAGES)

     132.   Plaintiff repeats and reiterates each and every allegation contained in the

preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at

length herein.

     133.   At all times relevant to this action, the ADA, 42 U.S.C. §§ 12101, *et seq.*

was in full force and effect and applied to defendants' dealings with plaintiff.

     134.   At all times relevant to this action, the United States Department of Justice

regulations implementing Title II of the ADA, 28 CFR 35, were in full force and effect and

applied to the defendants' dealings with plaintiff.

     135.   At all times relevant to this action, plaintiff had a significant hearing and

speech impairment and was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.. § 12102(2).

136.  At all times relevant to this action, the defendants The State of New York and New York State Office of Court Administration were public entities within the meaning of Title II of the ADA.

137.  The objective of the ADA is to eliminate discrimination against individuals with disabilities.  Section 202 of the ADA, 42 U.S.C. § 12132 provides that "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity".

138.  Defendants' failure to provide effective communication with and for Plaintiff in violation of their obligations under the Title II of the ADA has directly injured, and continues to injure, Plaintiff.

139.  Defendants' violations of Title II of the ADA deprived plaintiff of accommodations to which he was entitled to by law and intentionally and directly caused Plaintiff to sustain past and continuing physical and emotional injuries requiring medical treatment. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

140.  Defendants' violations of the ADA deprived plaintiff of the accommodations to which she was entitled and were intentional and the product of defendants' deliberate indifference to the strong likelihood that their policies and conduct would likely result in a violation of federally protected rights.

141.  The intentional nature of the violations of the ADA on the part of the

defendants The State of New York, its New York State Office of Court Administration, and its

Department of Motor Vehicles and their deliberate indifference is demonstrated by the fact that

the ADA has been in effect since 1990, almost 24 years prior to plaintiff's court appearances and

defendants have failed to bring themselves into compliance with the requirements of said statute

and its applicable regulations despite that extraordinary passage of time.

142.  Defendants violated Title II of the ADA, and its regulations in failing to

ensure that their services, programs and activities were accessible to qualified individuals with

hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and

services, including, but not limited to, the provision of qualified sign language interpreters; in

failing to provide qualified individuals with a hearing impairment, and plaintiff in particular,

with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters,

when necessary to provide effective communication; in failing to maintain a list of "on-call"

qualified sign language interpreters who are available 24 hours a day; in failing to provide

plaintiff with a qualified sign language interpreter within a reasonable time after the request was

made; and in failing to assure that sign language services would be available 24 hours a day

143.  Defendants violations of Title II of the ADA and its applicable regulations

as hereinbefore alleged subjected plaintiff to discrimination on the basis of his disability and

deprived plaintiff of his right to an equal opportunity to participate in or benefit from the

services, programs, or activities of a the defendant public entities and directly caused Plaintiff to

sustain past and continuing physical and emotional injuries requiring medical treatment. Plaintiff

has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants'

patterns and practices of discrimination.

144.  Plaintiff has thereby been damaged by the violation of Title II of the ADA

on the part of the defendants The State of New York and the New York State Office of Court

Administration and demands compensatory damages in the sum of Five Million Dollars and

punitive damages in the sum of Five Million Dollars and together with attorneys' fees and the

costs and disbursements of this action.

AS AND FOR A FIFTH CAUSE OF ACTION

VIOLATION OF THE NYS HUMAN RIGHTS LAW

(ALL DEFENDANTS)

(COMPENSATORY & PUNITIVE DAMAGES)

145.  Plaintiff repeats and reiterates each and every allegation contained in the

preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at

length herein.

146.  At all times relevant to this action, the New York State Human Rights Law,

Executive Law Article 15, was in full force and effect and applied to the Defendants' conduct.

147.  At all times relevant to this action, Plaintiff had a significant hearing

impairment and related speech impairment and is a "person with a disability" within the meaning

of the NYS Human Rights Law..

148. The New York State Human Rights Law prohibits discrimination on the

basis of disability.

149.  Defendants' failed and refused to ensure effective communication with and

for Plaintiff as hereinbefore alleged

150.  Defendants' failure and refusal to ensure effective communication with and

for Plaintiff as hereinbefore alleged constituted discrimination against her on the basis of

disability in violation of the NYS Human Rights Law.

151. Defendants' failure to provide effective communication with and for Plaintiff as hereinbefore alleged in violation of their obligations under the NYS Human Rights Law has directly injured, and continues to injure, Plaintiff.

152. Defendants' violations of the NYS Human Rights Law mentioned above directly caused Plaintiff to sustain past and continuing physical and emotional injuries. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

153. Plaintiff has thereby been damaged by the defendants' violations of the New York State Human Rights Law and demands compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of One Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

AS AND FOR A SIXTH CAUSE OF ACTION

VIOLATION OF THE NYC HUMAN RIGHTS LAW

(ALL DEFENDANTS)

154. Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

155. At all times relevant to this action, the New York City Human Rights Law was in full force and effect and applied to the Defendants' conduct.

156. At all times relevant to this action, Plaintiff had a significant hearing impairment and related speech impairment and was afflicted with Parkinson's Disease and was and is a "person with a disability" within the meaning of the NYC Human Rights Law..

157. The New York City Human Rights Law prohibits discrimination on the basis

of disability.

158. Defendants' failed and refused to ensure effective communication with and for Plaintiff as hereinbefore alleged

159. Defendants' failure and refusal to ensure effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against him on the basis of disability in violation of the NYC Human Rights Law.

160. Defendants' failure to provide effective communication with and for Plaintiff as hereinbefore alleged in violation of their obligations under the NYC Human Rights Law has directly injured, and continues to injure, Plaintiff.

161. Defendants' violations of the NYC Human Rights Law mentioned above directly caused Plaintiff to sustain past and continuing physical and emotional injuries. Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

162. In compliance with the notice requirements of the New York City Human Rights Law, Section 8-502 ( c ) of the Administrative Code of the City of New York, within 10 days of the commencement of this action, plaintiff will serve a copy of this Complaint upon representative designated by the city commission on human rights and the corporation counsel as authorized to receive copies of complaints in actions commenced in whole or in part pursuant to subdivision a of Section 8-502 of the NYC Administrative Code.

163. Plaintiff has thereby been damaged by the defendants' violations of the New York State Human Rights Law and demands compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of One Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

AS AND FOR A SEVENTH CAUSE OF ACTION

FALSE ARREST

(DEFENDANTS NYC and POLI CE OFFICER DAVID RAMOS)

164.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this complaint with the same force and effect as if more fully set forth at length herein.

165.  On May 27, 2015, the defendant New York City Police Officer David Ramos, in the County of New York, arrested plaintiff without a warrant on charges of offering a false instrument for filing and attempted offering of a false instrument for filing.

166.  In making such arrest defendant Ramos knew or should have known that he had not observed plaintiff engage in any act of offering a false instrument for filing and/or attempted offering of a false instrument for filing, that any such acts, if they did occur, did not occur in the County of New York, and that the statute of limitations with respect to said charges had expired prior to the time of the arrest.

167.  Upon being informed of the accusations being made against him by defendant Ramos, plaintiff informed defendant Ramos that he was innocent of the accusations being made against him.

168.  Despite the protestations of plaintiff that he had committed no crime in applying for renewal of his drivers license and that he had made and submitted such application in the presence of and with the assistance of a DMV official whom he had made aware of his deafness, defendant Ramos proceeded to place plaintiff under arrest and caused him to be confined and detained against his will and without his consent for over 24 hours, first at the Precinct wherein the arrest occurred and thereafter in the jail/detention facility/holding pens at

the New York City Criminal Court Building at 100 Centre Street, New York City, New York.

169. The aforesaid arrest and detention and confinement of the plaintiff ANT was effected without a warrant and was presumptively unlawful.

170. The aforesaid arrest and detention and confinement of the plaintiff was effected without probable cause in that it was based upon pure speculation on the part of arresting officer Ramos as to what communications had been had at the time plaintiff submitted his license renewal application to the DMV, and pure speculation and without adequate inquiry and investigation on the part of the defendant Ramos as to how and why plaintiff had been informed to respond to the question on the application regarding his deafness, and what plaintiff's understanding of such question was at the time he completed and submitted such application.

171. The aforesaid arrest and detention and confinement of the plaintiff was also effected without probable cause in that it was based upon wrongful and incorrect information which could have been avoided had the defendant engaged in effective communication with plaintiff by securing and utilizing the services of a qualified sign language interpreter.

172. The aforesaid arrest and detention and confinement of the plaintiff was also effected without probable cause in that it was motivated upon defendant Ramos' discriminatory animus with respect to plaintiff based on his hearing disability and with and for purposes of retaliating against plaintiff or asserting his civil rights and statutory rights to be free from discrimination on the basis of disability in connection with the prior arrest of plaintiff by defendant Ramos.

173. The arrest and detention and confinement of plaintiff was intended by the defendant Ramos.

174.  The arrest and detention and confinement of plaintiff took place without plaintiff's consent.

175.  At all times during the period of his arrest, detention and confinement, plaintiff was conscious of his confinement.

176.  The arrest and detention and confinement of plaintiff was not otherwise privileged.

177.  The arrest and detention of plaintiff by defendant police officer David Ramos was void ab-initio as he was acting without jurisdiction in that the alleged criminal acts for which he arrested plaintiff did not occur in his presence and did not occur within the City of New York or any adjoining county.

178.  The District Attorney of the County of New York subsequently elected to dismiss the charges against plaintiff.

179.  At all times during the his arrest, confinement and detention of plaintiff, defendant Police Officer David Ramos was acting in his capacity as an employee of the defendant City of New York and its police department.

180.  The defendant City of New York is liable for the wrongful, unlawful, and tortious acts and omissions of defendant Police Officer Ramos pursuant to principles of vicarious liability and respondeat superior.

181.  The unlawful arrest, detention and confinement of plaintiff caused plaintiff loss of his freedom and damage to his reputation and has resulted in permanent and severe emotional, psychological and physical harm to plaintiff requiring medical attention, all to his damage.

182.  On or about August 25, 2015 and within 90 days of the occurrence and false

arrest herein complained of, plaintiff caused a Notice of Claim sounding in False Arrest to be filed with the Comptroller of the City of New York in accordance with Section 50-e of the General Municipal Law of the State of New York.

183.  More than 30 days have elapsed since the filing of such Notice of Claim and the defendant City of New York has failed and refused to settle and adjust said claim.

184.  This action is commenced within one year and 90 days of the occurrence of the false arrest herein complained of.

185.  The defendant City of New York has waived its right to conduct a 50-h hearing of plaintiff with respect to the claims asserted in the Notice of Claim for False Arrest in that plaintiff and his counsel duly appeared at the time and place designated for such hearing and the defendant City's designated attorney failed and refused to proceed with said hearing due to her wrongful and discriminatory dispute with and interference with the sign language interpreter selected by the City to provide sign language interpreting services to plaintiff at the hearing.

186.  Plaintiff is thereby entitled to compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars.

## AS AND FOR A EIGHTH CAUSE OF ACTION

## MALICIOUS PROSECUTION

### (DEFENDANTS NYC and POLI CE OFFICER DAVID RAMOS)

187.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this complaint with the same force and effect as if more fully set forth at length herein.

188.  On or about May 27, 2015, the defendant NYC Police Officer David Ramos, acting in the course of his employment, commenced and continued a criminal proceeding against

plaintiff alleging that he engaged in conduct constituting the crimes of Offering a False

Instrument for Filing and Attempted Offering of a False Instrument for Filing.

189.   The said criminal proceeding commenced and continued by defendant

Ramos was ultimately terminated in plaintiff's favor when the charges against him were

dismissed with the consent of the Manhattan District Attorney.

190.   The aforesaid criminal proceeding was initiated and continued without

probable cause, as hereinbefore alleged.

191.   Defendant acted with malice in initiating the aforesaid criminal proceeding

against plaintiff.

192.   Defendant acted with malice in initiating the aforesaid criminal proceeding

against plaintiff in that the accusations he made against plaintiff were false and were made with

reckless disregard for the truth.

193.   Defendant acted with malice in initiating the aforesaid criminal proceeding

against plaintiff in that it was motivated upon defendant Ramos' discriminatory animus with

respect to plaintiff based on his hearing disability and for purposes of retaliating against plaintiff

for asserting his civil rights and statutory rights to be free from discrimination on the basis of

disability in connection with the prior arrest of plaintiff by defendant Ramos.

194. The malicious prosecution of plaintiff by the defendant Ramos caused

plaintiff loss of his freedom and damage to his reputation and has resulted in permanent and

severe emotional, psychological and physical harm to plaintiff requiring medical attention, all to

his damage.

195.   Within 90 days of the resolution of the criminal charges initiated against

plaintiff by defendant Ramos in a disposition favorable to plaintiff herein, plaintiff caused a

Notice of Claim sounding in Malicious Prosecution to be filed with the Comptroller of the City

of New York in accordance with Section 50-e of the General Municipal Law of the State of New

York.

196.  More than 30 days have elapsed since the filing of such Notice of Claim and

the defendant City of New York has failed and refused to settle and adjust said claim.

197.  This action is commenced within one year and 90 days of the termination of

the criminal action in favor of plaintiff and the accrual of the claim for Malicious Prosecution.

198.  The defendant City of New York has waived its right to conduct a 50-h

hearing of plaintiff with respect to the claims asserted in the Notice of Claim for Malicious

Prosecution in that plaintiff and his counsel duly appeared at the time and place designated for

such hearing and the defendant City's designated attorney failed and refused to proceed with said

hearing due to her wrongful and discriminatory dispute with and interference with the sign

language interpreter selected by the City to provide sign language interpreting services to

plaintiff at the hearing.

199.  Plaintiff is thereby entitled to compensatory damages in the sum of Five

Million Dollars and punitive damages in the sum of Five Million Dollars.

## AS AND FOR A NINTH CAUSE OF ACTION

## VIOLATION OF ALL ANTI-DISCRIMINATION LAWS

### (DEFENDANT NYC)

200.  Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs of this complaint with the same force and effect as if more fully set forth at

length herein.

201.  The defendant City of New York, by its Comptroller, issued notices

requiring plaintiff to submit to a hearing pursuant to Section 50-h of the General Municipal Law

at the Billig Law Office with respect to the Notices of Claims filed by plaintiff in support of the

aforesaid claims for false arrest and malicious prosecution.

202. The defendant City of New York designated attorney Billig of the Billig

Law Office to be its agent to conduct the 50-h hearing.

203. The defendant City of New York and/or its agent retained a sign language

interpreter of its/their own choosing to provide sign language interpreting services to plaintiff

during the 50-h hearing.

204. Plaintiff and his counsel appeared at the Billig Law Office for the 50-h

hearing at the designated time. Plaintiff had traveled approximately 5 hours from upstate

Saratoga County to comply with the City's demand for a 50-h hearing.

205. Prior to the start of the 50-h hearing, plaintiff and the sign language

interpreter engaged in the customary exchange of communications to acquaint themselves with

each other and the signing skills and mannerisms of each other, to assure that they were able to

adequately communicate with each other.

206. In addition, prior to the start of the hearing the sign language interpreter

communicated to plaintiff in sign all spoken communications taking place in the presence of the

deaf plaintiff and the interpreter, particularly the communications between counsel and

communications between counsel and the court reporter.

207. The aforesaid exchange of signed communications between plaintiff and the

court reporter are customary, necessary, proper, generally accepted and consistent with the Sign

Language Interpreters' Code of Ethics.

208. Attorney Billig, on behalf of the defendant City commenced an argument

with the sign language interpreter directing him to cease communicating with plaintiff and directing him to not communicate to plaintiff any spoken conversations until the hearing began.

209.  In so directing the interpreter to cease what he was doing, attorney Billig interfered with the interpreter in the performance of his duties and effectively directed the interpreter to violate the Sign Language Interpreters Code of Ethics.

210.  When the interpreter attempted to inform attorney Billig that it was necessary for the deaf plaintiff and the interpreter to acquaint himself with the sign and communication skills and habits of the deaf plaintiff and that his Code of Ethics obligated him to sign all spoken communication taking place in his presence, attorney Billig responded that the interpreter was being paid by her client and therefore the interpreter was obligated to comply with her instructions.  Attorney Billig went so far as to contact the agency from which the interpreter had been provided, insisting that the agency direct the interpreter to comply with her directives

211.  The aforesaid dispute with the Sign Language Interpreter led to the interpreter finding himself compelled to leave.

212.  Attorney Billig thereupon insisted that plaintiff, his counsel and the court reporter remain for an hour or longer while she attempted to find another sign language interpreter, a futile exercise given that it was approximately 5 PM on a Friday evening.

213.  When plaintiff's counsel attempted to make an on the record statement as to what had transpired and was transpiring, attorney Billig directed the court reporter that she was not to make any such record, asserting that she had the right to do so because her office had retained the court reporter and notwithstanding that plaintiff's counsel offered to pay the court reporter's fee for such a record.

214. By her actions in interfering with the sign language interpreter in the performance of his duty to provide communication assistance to the deaf plaintiff, attorney Billig discriminated against plaintiff on the basis of his deafness in violation of the Americans With Disabilities Act, the rehabilitation Act of 1973, the New York State Human Rights Law and the new York City Human Rights Law.

215. By her actions in preventing the court reporter from providing the reporting services needed to enable plaintiff's counsel to make a record of what was transpiring, attorney Billig deprived plaintiff of his right to counsel in violation of the Constitutions and laws of the United States and the State of New York.

216. The foregoing conduct on the part of the defendant City's agent, attorney Billig, caused plaintiff humiliation and distress, all to his damage.

217. The defendant City of New York is liable for the wrongful, unlawful and tortious acts of its agent, attorney Billig, pursuant to principles of vicarious liability and respondeat superior.

218. Plaintiff is thereby entitled to compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars.

AS AND FOR A TENTH CAUSE OF ACTION

UNLAWFUL RETALIATION

(DEFENDANTS RAMOS and NYC)

219. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this complaint with the same force and effect as if more fully set forth at length herein.

220. The Americans with Disabilities Act, the Rehabilitation Act of 1973, the

New York State Human Rights Law and the New York City Human Rights Law all prohibit

retaliation against any individual entitled to the benefits and protections of those laws for filing a

charge of discrimination, participating in a discrimination proceeding, or otherwise opposing

discrimination.

221.   Defendant Police Officer David Ramos, in subjecting plaintiff to false arrest

and malicious prosecution as hereinbefore alleged, and in falsely reporting to the New York State

DMV that plaintiff's driving habits and/or deafness rendered him an unsafe driver as

hereinbefore alleged, engaged in said actions with the motivation and for the purpose of

retaliating against plaintiff for plaintiff's assertion of his rights pursuant to the aforesaid anti-

discrimination laws in the defense of the DWI charges brought against plaintiff by defendant

Ramos.

222.   Defendant Ramos has thereby engaged in unlawful retaliatory conduct

against plaintiff in violation of the Americans with Disabilities Act, the Rehabilitation Act of

1973, the New York State Human Rights Law and the New York City Human Rights Law.

223.   The retaliatory conduct to which plaintiff was subjected by defendant Ramos

caused plaintiff to experience and develop great emotional distress, humiliation, fear, a sense of

isolation and a distrust of police and public officials, and further caused plaintiff to suffer

financial and economic loss.

224.   At all times while defendant Ramos was engaging in the aforesaid retaliatory

practices against plaintiff, defendant Police Officer David Ramos was acting in his capacity as an

employee of the defendant City of New York and its police department.

225.   The defendant City of New York is liable for the wrongful, unlawful, and

tortious acts and omissions of defendant Police Officer Ramos pursuant to principles of vicarious liability and respondeat superior.

226.  Plaintiff is thereby entitled to compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars.

AS AND FOR A ELEVENTH CAUSE OF ACTION

CONSTITUTIONAL VIOLATIONS

(ALL DEFENDANTS)

227.  Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this complaint with the same force and effect as if more fully set forth at length herein.

228.  By their conduct as aforesaid, the defendants deprived plaintiff of his rights to which he was and is entitled under the Constitutions of the United States and the State of New York, including the right of access to the courts, the right to counsel, the equal protection of the laws, the right to be free from unlawful search and seizure, and the right to life, liberty and the pursuit of happiness.

229.  By way of example and not limitation, Defendants failed to accommodate plaintiff's hearing impairment and failed to afford him due process of law, falsely informed plaintiff that he was not entitled to counsel during his confinement and testing, falsely claimed to provide him with the services of a skilled and qualified sign language interpreter, falsely reported that he had refused a Breathalyzer test when he has not done so, and falsely charged him with spurious and/or false offenses solely for the purpose of discrimination, retaliation, harassment and degradation

230. As the direct and immediate result of the foregoing conduct, Plaintiff has been caused to suffer damages involving extreme and grievous physical, emotional and psychological trauma, all to his detriment.

231. The actions described herein constitute not an isolated incident but rather part of a pattern and practice routinely followed as policy within the New York City Police Department, the NYS Office of Court Administration, the NYS Department of Motor Vehicles, indicative of a custom to disregard the constitutional rights of persons who are deaf and those who have other hearing and/or speech impairments.

232. The actions described herein clearly violate established statutory and constitutional norms and it was not objectively reasonable for the officers involved to have believed their conduct could have been legal.

236. The conduct of The City of New York and its Police Department violates their own settlement agreement previously entered into with the United States Department of Justice, which directly relate to accommodating those with hearing disabilities.

237. As a direct and proximate result of Defendants' unlawful conduct as hereinbefore alleged, Plaintiff suffered adverse consequences.  Plaintiff was caused to endure severe extreme humiliation, emotional pain and trauma, all to his detriment and damage.

238. Plaintiff is thereby entitled to compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars.

## AS AND FOR A TWELFTH CAUSE OF ACTION

## VIOLATIONS OF 42 U.S.C. 1983

(DEFENDANTS RAMOS and BANGALI )

239.  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

240.  The defendant Police Officers, by their conduct as hereinbefore alleged, have deprived plaintiff of his civil, constitutional and statutory rights under color of law and are liable to plaintiff under 42 U.S.C. 1983 and the Constitution and Laws of the United States.

241.  In depriving plaintiff of the reasonable accommodations to which he was entitled in order to be able to engage in effective communication during the period of detention as hereinbefore alleged, the defendants, acting under color of law, wrongfully and maliciously and intentionally deprived plaintiff of his right to liberty without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

242.  In falsely reporting that plaintiff had refused to submit to a chemical breath test and thereby causing plaintiff to have his license immediately confiscated and suspended, and endangered plaintiff's ability to obtain a reduction in the charges against him from a misdemeanor DWI to a non criminal DWAI violation, defendants, acting under color of law, wrongfully and maliciously and intentionally deprived plaintiff of his right to property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

243.  In depriving plaintiff of the reasonable accommodations of assistive communication devices for the deaf and a sign language interpreter to which he was entitled in order to be able to engage in effective communication during the period of detention as

hereinbefore alleged, the defendants, acting under color of law, wrongfully and maliciously and intentionally deprived plaintiff of his right to counsel in violation of the Sixth Amendment to the United States Constitution.

244.   In depriving plaintiff of the reasonable accommodations of assistive communication devices for the deaf and a sign language interpreter to which she was entitled in order to be able to engage in effective communication during the period of detention as hereinbefore alleged, defendants, acting under color of state law, subjected plaintiff to disparate treatment on the basis of disability thereby denying plaintiff her right to equal protection of the laws under the Fourteenth Amendment to the Constitution.

245.   In subjecting plaintiff to discrimination and disparate treatment on the basis of disability, and in denying plaintiff the benefit of sign language interpreting services in his dealings with each of their respective agencies, defendants, acting under color of law, deprived plaintiff of his statutory rights under the Rehabilitation Act and the ADA to be free from discrimination on the basis of disability and of his statutory right under the Rehabilitation Act and the ADA to equal opportunity to participate in or benefit from the services, programs, or activities of a public entity.

246.   In depriving plaintiff of his right to the reasonable accommodation of a sign language interpreter during his confinements in jail and thereby delaying plaintiff's arraignment, defendants, acting under color of law, deprived plaintiff of his right of access to the Courts in violation of plaintiff's due process and equal protection rights as guaranteed by the  Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

247.   Plaintiff has thereby been damaged in the sum of Five Million Dollars.  In

addition, because the defendants acted with malice and intentional disregard for his
Constitutional rights, Plaintiff seeks Five Million Dollars in punitive damages.

AS AND FOR A THIRTEENTH CAUSE OF ACTION

VIOLATIONS OF 42 U.S.C. 1985

(DEFENDANTS RAMOS and BANGALI)

248.  Plaintiff repeats and reiterates each and every allegation contained in the
preceding paragraphs of  this Complaint with the same force and effect as if more fully set forth
at length herein.

249.  In engaging in their unlawful discriminatory acts as hereinbefore alleged, the
defendant police officers engaged in a joint venture and conspiracy.  The individual officers
assisted each other in performing the various actions described and lent their physical presence
and support and the authority of their office to each other during said events.

250.  In so acting as hereinbefore alleged, the defendant police officers, acting
under color of law and in violation of 42 U.S.C. 1985 engaged in a conspiracy for the purpose of
depriving plaintiff of the equal protection of the laws and the equal privileges and immunities
under the laws and for the purpose of hindering the constituted authorities of the State from
giving or securing the persons within the State, and plaintiff in particular, the equal protection of
the laws and thereby injured plaintiff in his person and property and deprived plaintiff of having
and exercising his rights and privileges as a citizen of the United States.

251.  Plaintiff has thereby been damaged in the sum of Five Million Dollars.  In
addition, because the defendants acted with malice and intentional disregard for his
Constitutional rights, Plaintiff seeks Five Million Dollars in punitive damages.

AS AND FOR A FOURTEENTH CAUSE OF ACTION

VIOLATIONS OF 42 U.S.C. 1983

MUNICIPAL LIABILITY

252..  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of  this Complaint with the same force and effect as if more fully set forth at length herein.

253.  The City of New York and NYPD Police Commissioner Bratton are liable for the damages suffered by plaintiff as result of the conduct of their employees, agents, and servants and the others whose names are currently unknown.

254.  The City, and the Police Commissioner knew or should have known of their employees', agents', and/or servants' propensity to engage in the illegal and wrongful acts detailed above under color of law, as well as their inability to effectively communicate with deaf and hearing and speech impaired persons and their discriminatory attitude and behavior towards such persons..

255.  The aforesaid events were not an isolated incident. The City, and the Police Commissioner were and are aware from complaints filed with the Civilian Complaint Review Board and the U.S. Department of Justice that many of their police officers are insufficiently trained on the proper basis for an arrest and the proper treatment of deaf and hearing impaired individuals being subjected to arrest.  The City and Police Commissioner were further aware from the same sources, that a "wall of silence" exists by which police officers mistreat citizens, and deaf and hearing impaired citizens in particular, without fear of reprisal. The City and Police Commissioner failed to discipline officers for not reporting fellow officers' misconduct that they

have observed, and they failed to discipline officers for making false statements to disciplinary agencies. Additionally, the City and Police Commissioner and have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate the plaintiff's civil rights, without fear of reprisal.

256.  The City and the Police Commissioner knew or should have known that the officers who discriminated against plaintiff and caused plaintiff injury had a propensity for the type of conduct that took place in this case. Nevertheless, the City and the Police Commissioner failed to take corrective action.

257.  The City and the Police Commissioner have failed to take the necessary steps to discipline, train, supervise or otherwise correct the improper, illegal and discriminatory conduct of the individual defendants in this and in similar cases involving misconduct and discrimination.

258.  The above described policies and customs demonstrate a deliberate indifference on the part of policy makers of New York City and the Police Commissioner to the constitutional rights of persons within New York City, and were the cause of the violations of plaintiffs rights herein alleged.

259.  Defendants City of New York and the Police Commissioner and the former Corrections Commissioner  have damaged plaintiff by their failure to properly train, supervise,

discipline, review, remove, correct the illegal and improper and discriminatory acts of their

employees, agents or servants in this and in similar cases involving police misconduct.

260.. Plaintiff has been damaged as a result of the wrongful, negligent and illegal

actions of the City, the Police Commissioner in the amount of Five Million dollars. Because of

the egregious nature of the discrimination and violations of law, plaintiff is also entitled to

Punitive Damages in the sum of Five Million Dollars.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

### VIOLATIONS OF 42 U.S.C. 1983

### STATE LIABILITY

261.  Plaintiff repeats and reiterates each and every allegation contained in the

preceding paragraphs of  this Complaint with the same force and effect as if more fully set forth

at length herein.

262.  The State of New York, its Executive Deputy Commissioner of Motor

Vehicles, Theresa L. Egan and the Office of Court Administration  are liable for the damages

suffered by plaintiff as result of the conduct of their employees, agents, and servants and the

others whose names are currently unknown.

263.  The State, Commissioner Egan and the Office of Court Administration

knew or should have known of their employees', agents', and/or servants' propensity to engage in

the illegal and wrongful acts detailed above under color of law, such as failing and refusing to

provide sign language interpreters to be present and facilitate communication between deaf

license applicants and other deaf drivers required to submit to road tests, as well as their inability

to effectively communicate with deaf and hearing and speech impaired persons and their

discriminatory attitude and behavior towards such persons.

264.  The State, Commissioner Egan and the Office of Court Administration  have promulgated policies that permit discrimination of the aforesaid nature to exist within the Department of Motor Vehicles and have failed to promulgate policies to prohibit and end such discrimination.

265.  Defendants State of New York, the DMV Commissioner and the Office of Court Administration  have damaged plaintiff by their failure to properly train, supervise, discipline, review, remove, correct the illegal and improper and discriminatory acts of their employees, agents or servants in this and in similar cases involving deprivation of reasonable accommodations.

266.  Plaintiff has been damaged as a result of the wrongful, negligent and illegal actions of the State of New York, the DMV Commissioner and the Office of Court Administration in the amount of Five Million dollars. Because of the egregious nature of the discrimination and violations of law, plaintiff is also entitled to Punitive Damages in the sum of Five Million Dollars.

AS AND FOR A SIXTEENTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

NYC, NYPD, and POLICE OFFICERS RAMOS and BANGALI

267. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length herein.

268. The acts herein complained of which were engaged in by defendants Ramos

and Bangali constitute extreme and outrageous conduct undertaken with an intent to cause, or with a reckless disregard of the substantial probability of causing, severe emotional distress to Plaintiff, and these acts did in fact cause severe emotional distress to Plaintiff.

269. Defendants' actions, being taken in the context of the official authority of the police and being directed against deaf suspect were so outrageous as to exceed the bounds tolerated by society.

270. The City of New York is liable for the actions of its police officers under principles of vicarious liability and respondeat superior.

271. Plaintiff has been damaged as a result of the wrongful, negligent and illegal actions of the defendants NYC and POLICE OFFICERS RAMOS and BANGALI in the amount of Five Million dollars. Because of the egregious nature of the discrimination and violations of law, plaintiff is also entitled to Punitive Damages in the sum of Five Million Dollars.

AS AND FOR A SEVENTEENTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
NYC, NYPD, and POLICE OFFICERS RAMOS and BANGALI

272. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length herein.

273. The City of New York knew or should have known that the police officers who dealt with Plaintiff as described herein had the propensity to expose persons like Plaintiff to the harms described herein, yet the City of New York still retained these officers and thereby enabled them to take such actions

274. Moreover, the City of New York could have prevented the injuries sustained

by Plaintiff if it had not negligently failed to supervise and train the police officers who dealt with Plaintiff so as to prevent their harmful and injurious behavior.

275.  Plaintiff has been damaged as a result of the wrongful, negligent and illegal actions of the defendants NYC and POLICE OFFICERS RAMOS and BANGALI  in the amount of Five Million dollars. Because of the egregious nature of the discrimination and violations of law, plaintiff is also entitled to Punitive Damages in the sum of Five Million Dollars.

AS AND FOR A EIGHTEENTH CAUSE OF ACTION

INJUNCTIVE RELIEF

THE STATE OF NEW YORK & CITY OF NEW YORK

276. Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length herein.

277. Money damages are insufficient to fully address the claims set forth herein, particularly those that involve deprivation of access to the Courts and deprivation of the right to counsel and irreparable injury will result unless Plaintiff is granted a pennanent injunction requiring the New York City Police Department and NYS Office of Court Administration to provide sign-language interpreters to hearing-impaired persons who are arrested and incarcerated.

**WHEREFORE**, Plaintiff demands judgment as follows:

On each of the First through Seventeenth Causes of Action, judgment against the Defendants and an award of compensatory damages in the sum of Five Million Dollars and punitive damages in the sum of Five Million Dollars together with costs, disbursements and attorneys fees and

On the Eighteenth Cause of Action a judgment against Defendants and a

permanent injunction requiring the New York City Police Department and Office of Court

Administration to have proper training, policies, and procedures in place and provide reasonable

accommodations such as sign-language interpreters to all hearing-impaired persons upon arrest

and incarceration, and further relief as this Honorable Court deems just, equitable and proper.

JURY DEMAND

Plaintiff demands Trial by Jury of all causes of action so triable.

Dated: Syosset, NY
         August 25, 2016

                                        /s/ Ralph G. Reiser
                                        RALPH G. REISER, ESQ. (rr6700)
                                        Attorney for Plaintiff
                                        3 Walnut Drive
                                        PO Box 171
                                        Syosset, NY 11791
                                        516-496-9745
                                        516-496-9754 TDD/FAX
                                        516-638-6130 VP
                                        Reiserlaw@aol.com