UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SERGEI A. KRAVTCHOUK,

                    Plaintiff,

          - against -

THE CITY OF NEW YORK *et al.*

                    Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CV-4787 (RRM) (JO)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Sergei Kravtchouk brings this action against defendants the City of New York ("the City"); New York City Police Department officers David Ramos, Pedro Vilorio, and R. Bangali; and New York County Assistant District Attorney Tanisha Palvia.[1] At issue here are claims Kravtchouk asserts against Palvia, Ramos, and the City. Against these three defendants Kravtchouk asserts claims for false arrest and malicious prosecution; violations of 42 U.S.C. §§ 1983 and 1985; and retaliation under the Americans with Disabilities Act, the Rehabilitation Act of 1973, the New York State Human Rights Law, and the New York City Human Rights Law. Ramos and the City have moved for partial judgment on the pleadings with respect to these claims pursuant to Federal Rule of Civil Procedure 12(c). Palvia has moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

      For the reasons stated below, the motions of defendants Palvia, Ramos and the City of New York are granted. Kravtchouk's federal and state claims for false arrest, malicious prosecution, and conspiracy against these defendants are dismissed. Kravtchouk's retaliation

---

[1] Kravtchouk has withdrawn all claims asserted against New York County District Attorney Cyrus Vance, Jr., the State of New York, and the Office of Court Administration, and his claim against the City for negligent retention and hiring. (*See* Pl.'s Opp. to Mot. to Dismiss (Doc. No. 77) at 7–8; Pl.'s Opp. to Mot. J. Pldngs. (Doc. No. 69) at 3.) All page citations herein refer to ECF pagination.

1

claim is also dismissed, with leave to replead with respect to retaliation based on the report to the DMV.

## BACKGROUND[2]

Sergei A. Kravtchouk is profoundly deaf and communicates through American Sign Language. (Am. Compl. (Doc. No. 42) at ¶ 18.) On November 23, 2014, Kravtchouk was arrested for Driving While Intoxicated ("DWI") by New York Police Department ("NYPD") Officer David Ramos. (*Id.* at ¶ 19.) At the time of his arrest, Kravtchouk told Ramos that he is deaf and requested a sign language interpreter. (*Id.* at ¶¶ 20–21.) No interpreter came. Kravtchouk was unable to communicate with Ramos and was "compelled" to take a portable breath test. (*Id.* at ¶ 22.) He was thereafter taken to the NYPD's 28th Precinct. (*Id.* at ¶¶ 22–23.)

At the precinct, Kravtchouk was not given access to a qualified sign language interpreter, nor to a Teletypewriter for the Deaf ("TTY"). (Am. Compl. at ¶¶ 25, 29.) NYPD Officer R. Bangali was designated as Kravtchouk's interpreter, but Bangali was not an official interpreter and was unable to effectively communicate with Kravtchouk. (*Id.* at ¶¶ 31–36.) Kravtchouk refused to submit to a breathalyzer test at the precinct until an interpreter was provided. (*Id.* at ¶ 38.) Officer Ramos completed a report stating that Kravtchouk had refused to take a breathalyzer test (the "Refusal Report") and filed it with the Manhattan Criminal Court. (*Id.* at ¶ 42.)

Kravtchouk was then taken to Manhattan Central Booking. (Am. Compl. at ¶ 44.) At his arraignment, Kravtchouk's driver's license was suspended due to the Refusal Report. (*Id.* at ¶

---

[2] Unless otherwise noted, the facts herein are drawn from the amended complaint and accepted as true for the purposes of this Order.

2

48.) Kravtchouk pled not guilty to the DWI charge, "and insisted that he would defend the case and assert the discriminatory conduct to which he had been subjected by [defendant police officers] and the NYPD as a defense to the criminal charge." (*Id.* at ¶ 51.) Kravtchouk alleges that his stated intention to oppose his DWI charge on anti-discrimination grounds made Ramos and Assistant District Attorney Palvia decide to retaliate against him. (*Id.* at ¶ 53.)

Approximately six months after Kravtchouk's arrest, Palvia directed Ramos to investigate Kravtchouk's DMV records. (Am. Compl. at ¶ 53.) Ramos reviewed Kravtchouk's driver's license renewal application and concluded that Kravtchouk had falsely stated he did not have a hearing impairment. (*Id.* at ¶ 54.) Ramos provided this information to Palvia. (*Id.*) Later, at a court appearance for his DWI case, Kravtchouk was informed of his impending arrest on charges of offering a false instrument for filing and attempted offering a false instrument for filing. (*Id.* at ¶¶ 57, 62.) Kravtchouk surrendered to Ramos and was arrested on May 27, 2015. (*Id.* at ¶ 64.) Ramos and Palvia initiated Kravtchouk's prosecution on false filing charges. (*Id.* at ¶ 71.) Although Kravtchouk had been assured he would be arraigned and released the same day, Kravtchouk was detained overnight in jail due to delays in obtaining special accommodations for Kravtchouk's deafness. (*Id.* at ¶ 68.) Sometime after Kravtchouk was arraigned on the false filing charges, the New York District Attorney's office consented to a voluntary dismissal of those charges. (*Id.* at ¶ 72.)

At some point before September 28, 2015, "defendant Ramos and/or defendant Palvia made a report to the [New York State] DMV to the effect that [Kravtchouk's] driving patterns and/or medical condition of deafness were interfering with his safe operation of a motor vehicle." (Am. Compl. at ¶ 73.) At the time of this report, Ramos had only observed Kravtchouk operating a motor vehicle when he believed Kravtchouk was intoxicated, and Palvia

had never observed Kravtchouk's driving. (*Id.* at ¶ 74.) After receiving the report, the DMV issued a notice to Kravtchouk asking him to submit medical proof of his ability to safely operate a motor vehicle and asking him to take a road test on January 28, 2016. (*Id.* at ¶ 76.) Kravtchouk passed the road test. (*Id.* at ¶ 78.)

Kravtchouk later appeared for a Refusal Hearing before an Administrative Law Judge to challenge the Refusal Report made by Ramos. (Am. Compl. at ¶ 80.) In his defense, Kravtchouk offered the NYPD video of the breathalyzer testing sessions conducted by officers Ramos, Vilorio, and Bangali. (*Id.* at ¶ 83.) After reviewing the video, the Administrative Law Judge dismissed the Refusal Report. (*Id.* at ¶ 84.) Kravtchouk ultimately pled guilty to a charge of driving while ability impaired ("DWAI"). (*Id.* at ¶ 72.)

Based on the foregoing, Kravtchouk brings a number of claims against NYPD officers, the City of New York, and Palvia. At issue here are a subset of these claims. First, Kravtchouk brings false arrest and malicious prosecution claims based on his arrest and subsequent prosecution on false filing charges, which he alleges were initiated in the absence of jurisdiction and without probable cause. (Am. Compl. at ¶¶ 214–55.) Kravtchouk also brings §§ 1983 and 1985 claims alleging deprivation of his constitutional rights as a result of the same arrest and detention on false filing charges. (*Id.* at ¶¶ 266–284). Finally, Kravtchouk brings retaliation claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Section 504"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (*Id.* at ¶ 259.) Kravtchouk alleges that Ramos and Palvia pursued the false filing charges and reported him as an unsafe driver to the DMV in order to retaliate against him for asserting anti-discrimination claims as a defense to the DWI charges. (*Id.* at ¶ 258.)

Kravtchouk seeks $5 million in compensatory damages and $5 million in punitive damages for each of the claims at issue here. (Am. Compl. at ¶¶ 240, 255, 265, 274, 285.) Kravtchouk has brought each of these claims against Ramos and Palvia in their official and individual capacities (*id.* at ¶¶ 9, 17), and against the City "pursuant to principles of vicarious liability and respondeat superior," as Ramos was a City employee. (*Id.* at ¶¶ 233, 249, 263, 271, 282.) Ramos and the City have moved for judgment on the pleadings with respect to these claims pursuant to Federal Rule of Civil Procedure 12(c). (Doc. No. 65.) They argue, *inter alia*, that there was probable cause supporting Kravtchouk's arrest, and for this reason, they are entitled to judgement on the pleadings with respect to each of Kravtchouk's claims. (*See* Mot. J. Pldngs. (Doc. No. 67); Reply Supp. Mot. J. Pldngs. (Doc. No. 70).) Palvia has moved to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 71.) She argues, *inter alia*, that she is entitled to immunity from suit on Kravtchouk's claims under the doctrines of absolute prosecutorial immunity and Eleventh Amendment immunity. (*See* Mot. to Dismiss (Doc. No. 73); Reply Supp. Mot. to Dismiss (Doc. No. 74).)

## STANDARD OF REVIEW

Motions brought under FRCP Rules 12(b)(6) and 12(c) are analyzed under the same standard. *See Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999). The Court's review is limited to facts alleged in the complaint, documents attached to the complaint or incorporated by reference in the complaint, documents integral to the complaint, and matters of which the Court may take judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court assumes facts alleged in the complaint are true and draws all reasonable inferences in the nonmovant's favor, *see Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009), except in the case of

legal conclusions. *See Kiernozek v. Fed. Nat'l Mortg. Ass'n*, 670 F. App'x 12, 13 (2d Cir. 2016). To withstand a motion to dismiss or judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).

## DISCUSSION

**1. Documents Considered on the Motions**

Both Ramos and Palvia submitted Kravtchouk's driver's license renewal application along with their Rule 12 motions. (Zuckerman Decl. (Doc. No. 66), Ex. A; Gray Decl. (Doc. No. 72), Ex. 3.) Where a complaint "relies heavily upon [the] terms and effect" of a document, it may be deemed "integral" to the complaint and considered on a motion to dismiss or motion for judgment on the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). Kravtchouk alleges that he was arrested and charged with false filing on the basis of his renewal application. (Am. Compl. at ¶¶ 54, 57.) Kravtchouk further alleges that Ramos and Palvia lacked probable cause for his arrest and prosecution because the charges were based on a misunderstanding of Kravtchouk's response to a question on the renewal application. (*Id.* at ¶¶ 223–24, 244.) The amended complaint parses the application language. According to Kravtchouk, his "response to the question [on the renewal application] regarding deafness was accurate in that while he is deaf, his deafness had not developed subsequent to the prior time that he had renewed his license." (*Id.* at ¶ 55–56.) Kravtchouk's amended complaint thus heavily relies on the terms of the renewal application and argues that the application was legally

insufficient to support Kravtchouk's arrest and prosecution.  The application is integral to Kravtchouk's amended complaint.

This conclusion is further supported by Kravtchouk's discussion of the renewal application in his briefs opposing these Rule 12 motions.  In his opposition to Palvia's 12(b)(6) motion, Kravtchouk argues that the Court should not consider certain outside material submitted by Palvia, but distinguishes that outside material from the renewal application, noting, "Indeed the only documents that would possibly be properly submitted on this motion would be DA defendants' Exhibits 3 (February 6, 2013 License Renewal Application) [and two other exhibits]."  (Pl.'s Opp'n to Mot. to Dismiss at 14–15.)  Later in the same opposition, Kravtchouk cites the renewal application as evidence that the defendants acted outside their jurisdiction in arresting and prosecuting Kravtchouk on false filing charges.  (*Id.* at 22.)  Given Kravtchouk's use of the renewal application in his briefing, and Kravtchouk's careful consideration of the renewal application's text in his amended complaint, there appears to be little risk that Kravtchouk will be prejudiced by lack of notice that the application would be considered here.  *Cf. Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered.").  Because the renewal application is integral to Kravtchouk's amended complaint, the Court will consider it in ruling on these Rule 12 motions.

The Court also takes judicial notice of the criminal complaint supporting the false filing charges against Kravtchouk, which both Kravtchouk and Palvia submitted during briefing.  (Reiser Decl. (Doc. No. 68), Ex. 1; Gray Decl., Ex. 4.)  *See Harris v. City of New York*, No. 09-CV-3474 (KAM), 2013 WL 4858333, at *2 (E.D.N.Y. Sept. 10, 2013) (explaining that a court

deciding a motion to dismiss "can take judicial notice of . . . criminal complaints and indictments" (citations omitted)).

Plaintiff and defendants attached a number of other exhibits to their briefs: Ramos and Palvia's voicemail transcripts and text messages (Reiser Decl., Ex. 2; Reiser Opp'n to Mot. to Dismiss Decl. (Doc. No. 76), Ex. D), the DWI Criminal Complaint (Gray Decl., Ex. 1), the Refusal Report (*id.*, Ex. 2), the transcript of Kravtchouk's DWAI plea (*id.*, Ex. 5.), the Pre-Motion Conference Transcript (*id.*, Ex. 6), the NYPD Intoxicated Driver Instruction Sheet (Reiser Opp'n to Mot. to Dismiss Decl., Ex. A), the NYPD Arrest Info Sheet (*id.*, Ex. B), the Arresting Officer's Report (*id.*, Ex. C), the False Filing Arraignment Transcript (Gray Reply Decl. (Doc. No. 75), Ex. 1), and the DANY Representation Letter (*id.*, Ex. 2). None of these is attached to Kravtchouk's amended complaint, incorporated by reference in the amended complaint, or integral to the amended complaint. The documents that are potentially subject to judicial notice are not helpful in reaching a decision on the pending motions. Accordingly, the Court does not consider any of these exhibits.

### 2. False arrest, Malicious Prosecution and Conspiracy under §§ 1983 and 1985, and state law

Kravtchouk claims that Palvia and Ramos are liable for false arrest and malicious prosecution arising out of Kravtchouk's May 27, 2015, arrest for offering a false instrument for filing and attempted offering a false instrument for filing. (Am. Compl. at ¶ 214–55.) Kravtchouk also brings a § 1985 claim against Ramos alleging that Ramos conspired with Palvia to deny Kravtchouk his civil rights under the color of state law by "effectuat[ing] plaintiff's arrest and detention on May 27, 2015." (*Id.* at ¶ 276.) Kravtchouk claims the City is liable for these acts by Ramos under principles of vicarious liability and respondeat superior. (*Id.* at ¶¶ 233, 249.) Each of these claims must be dismissed.

a. **Eleventh Amendment**

As an initial matter, all claims brought against ADA Palvia in her official capacity are barred by the Eleventh Amendment, which bars federal courts from hearing suits by individuals against a state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).[3] When a person is sued in his or her capacity as a state official, the suit is deemed a suit against the state. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."). Assistant district attorneys are acting as state officials when they act as prosecutors. *See D'Alessandro*, 713 Fed. App'x at 8 ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." (citing *Ying Jing Gan*, 996 F.2d at 536)). The false arrest, malicious prosecution, § 1983, and § 1985 claims are brought against Palvia based on her actions as a prosecutor directing an investigation into Kravtchouk's records, reviewing the evidence, and initiating Kravtchouk's prosecution on false filing charges. Because these claims are brought against Palvia based on her actions as a prosecutor, they are barred by Eleventh Amendment immunity.

b. **Prosecutorial Immunity**

Moreover, a prosecutor is entitled to absolute immunity from suit in her individual capacity for actions taken in preparing to prosecute and in prosecuting a case. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an

---

[3] This rule is subject to exceptions not applicable here. *See, e.g.*, *Ex Parte Young*, 209 U.S. 123 (1908).

9

advocate for the State, are entitled to the protections of absolute immunity."). At the same time, when a prosecutor "performs the investigative functions normally performed by a detective or police officer," the prosecutor is only entitled to qualified immunity. *Id.* The Second Circuit has adopted a "functional approach" to this inquiry, asking whether "a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

Palvia's alleged actions in investigating and reviewing Kravtchouk's records, and in subsequently directing his arrest and prosecution on false filing charges, fall within the reasonable functions of a prosecutor. *See Giraldo*, 694 F.3d at 167 ("[I]nvestigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution . . . are shielded by absolute immunity when done by prosecutors."); *see also Powers v. Coe*, 728 F.2d 97, 104 (2d Cir. 1984) ("We believe that at the heart of the prosecutor's job is the decision whether to prosecute . . . ."). At the time that she directed Ramos to obtain Kravtchouk's DMV records, the DWI charges were still pending against him. Those records bear directly on Kravtchouk's ability and fitness to drive, and could potentially serve as a source of relevant evidence for use in the DWI prosecution. As Palvia notes, her conduct was "'intimately associated with the judicial phase of the criminal process' and occurred in the course of the prosecutor's role as an advocate and as 'officer of the court' engaging in the pursuit of plaintiff's prosecution." (Mot. to Dismiss at 9) (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). Palvia is thus entitled to absolute immunity from suit in her individual capacity for Kravtchouk's false arrest, malicious prosecution, § 1983, and § 1985 actions.

Much is made of Kravtchouk's claim that Palvia is not entitled to immunity because the false filing charges were initiated "in the clear absence of all jurisdiction." (Pl.'s Opp'n to Mot.

10

to Dismiss at 17.) Because he did not file the renewal application in New York County, Kravtchouk argues, Palvia, a New York County assistant district attorney, could not prosecute the false filing charges and was therefore proceeding in the absence of jurisdiction.

While Kravtchouk is correct that prosecutors can lose absolute immunity where they proceed "in the clear absence of all jurisdiction," *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Barr v. Adams*, 810 F.2d 358, 361 (2d Cir. 1987)), that is not the case here.

A prosecutor's jurisdiction is determined by statute. *See id*. at 237. As Kravtchouk suggests, New York law does provide that a charge of offering a false instrument for filing may be brought "in any county in which such instrument was executed," N.Y. Crim. Proc. Law § 20.40(4)(k), but New York law also provides for geographical jurisdiction where the "conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein." *Id*. § 20.40(2)(c). Due to his DWI arrest, Palvia knew Kravtchouk had previously been pulled over while driving in New York County. Because Palvia thus had a colorable claim that Kravtchouk's misrepresentations on his renewal application would affect the county – and indeed, did effect that very county as evidenced by Kravtchouk's DWI conviction – she did not proceed "in the clear absence of all jurisdiction." *See Shmueli*, 424 F.3d at 237. Palvia is therefore entitled to absolute immunity from suit in her individual capacity on Kravtchouk's false arrest, malicious prosecution, § 1983, and § 1985 claims.

    **c. Probable Cause**

A final and independent ground requiring dismissal is the existence of probable cause, which is an absolute defense against false arrest and malicious prosecution claims, whether

brought under state law, under § 1983, or under § 1985 as a conspiracy to engage in the same acts. *See Shaheed v. City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018), *reconsideration denied*, No. 14-CV-7424 (PAE), 2018 WL 3455406 (S.D.N.Y. July 18, 2018) (§ 1983 false arrest claim); *Bonide Prod., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) (§ 1983 malicious prosecution claim); *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 398 (S.D.N.Y. 2007) (Because "*actual infringement* of a constitutional right is required" to plead a § 1985 claim, the "determination that the Officers' actions were supported by probable cause is fatal to plaintiff's § 1985 claim.").

Probable cause for an arrest exists where, "based on the totality of circumstances, the officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). Probable cause for prosecution is measured at the time the judicial proceeding is commenced; however, if probable cause existed at the time of the arrest, "it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) (quoting *Johnson v. Constantellis*, 221 Fed. App'x. 48, 50 (2d Cir. 2007) (summary order)).

Here, taking the allegations in the light most favorable to Kravtchouk, and considering the renewal application which, as noted above, is integral to the amended complaint, there is more than ample ground to find probable cause supporting Kravtchouk's arrest for the false filing charges. Under New York law, "A person is guilty of offering a false instrument for filing in the second degree when, knowing that a written instrument contains a false statement or false

12

information, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant." N.Y. Penal Law § 175.30.[4] As is evident from his amended complaint, Kravtchouk does not dispute that he was the individual who submitted the renewal application. And he acknowledges that his arrest on the false filing charges was based on his response to a question on that renewal application. (Am. Compl. at ¶ 54–57.) The question reads, "Have you had, or are you being treated for, any of the following, or has a previous disability worsened?" (Zuckerman Decl., Ex. A at 3.) After the question is a list of disabilities, including "Hearing Impairment." Despite being hearing impaired – the very disability on which his claims here are predicated – Kravtchouk answered "No." (*Id.*) Kravtchouk does not deny that this was his answer. (*See* Am. Compl. at 56.) He also acknowledges that both Palvia and Ramos knew at the time they reviewed the application that Kravtchouk was deaf. (*Id.* at ¶ 65.)

The fact that Kravtchouk alleges that he misunderstood the renewal question when he answered it, or possibly that he was misled by a DMV employee in answering the question, do not change the probable cause analysis. (*See* Am. Compl. at ¶ 221, 223.) Neither Ramos nor

---

[4] Although Kravtchouk was charged with a misdemeanor under Section 175.30, there is some dispute in the record as to whether he was initially arrested for a felony under Section 175.35, which has an additional element the "intent to defraud the state or any political subdivision." This dispute is of no moment in the probable cause analysis because it is apparent on the face of the pleadings that there existed probable cause supporting Kravtchouk's arrest and prosecution for both the felony and misdemeanor offenses.

Kravtchouk does claim that the two-year statute of limitations applicable to misdemeanor charges vitiates the probable cause analysis. (Am. Compl. at ¶¶ 219, 244.) This argument fails for two reasons. First, probable cause existed for the felony charge under Section 175.35, which carries a five-year statute of limitations. *See* N.Y. Crim. Proc. Law § 30.10. Second, the statute of limitations in criminal actions is non-jurisdictional – it is an affirmative defense that may be waived. *See Sullivan v. LaPlante*, No. 03-CV-359 (OGS) (RFT), 2005 WL 1972555, at *7 (N.D.N.Y. Aug. 16, 2005), *aff'd*, 175 F. App'x 484 (2d Cir. 2006). Furthermore, the fact that the statute of limitations has expired for an offense does not defeat a finding of probable cause supporting an arrest or prosecution for that offense. *See id.* (Under New York law, "the statute of limitations is neither an element of the crime, nor a necessary component of probable cause, whether it be at the time of arrest or arraignment.").

Palvia were under any obligation to inquire into what Kravtchouk's state of mind might have been when he submitted the renewal application. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). The fact that Kravtchouk had potential defenses to the false filing charges does not eliminate the probable cause supporting his arrest.[5]

Because there existed probable cause for his arrest and subsequent prosecution, Kravtchouk fails to state a claim against Palvia and Ramos for false arrest or malicious prosecution. The claims against the City, alleged on the basis of vicarious liability and respondeat superior, consequently fail as well.

### 3. Retaliation

Kravtchouk alleges that Ramos and Palvia retaliated against him for raising anti-discrimination claims in his defense on the DWI charge. (Am. Compl. at ¶¶ 73, 256–65.) According to Kravtchouk, the retaliation took the form of "subjecting [him] to false arrest and malicious prosecution . . . and in falsely reporting to the New York State DMV that [Kravtchouk's] driving habits and/or deafness rendered him an unsafe driver . . . ." (*Id.*) For the same reasons set forth above, both Palvia and Ramos could not be held liable for retaliation if the

---

[5] Again, Kravtchouk attempts to defeat probable cause by claiming that the false filing charges should have been brought in Albany County. (Pl.'s Opp'n to Mot. J. Pldngs at 6; Pl.'s Opp'n to Mot. to Dismiss at 25.) Geographical jurisdiction is a question of venue – of where a case may be tried – and it plays no role in the probable cause inquiry. *See People v. Patterson*, 708 N.Y.S.2d 815, 818 (N.Y. Crim. Ct. 2000) ("The geographical jurisdiction of a given county within the State over an alleged crime is a question of venue. Geographical jurisdiction is not an element of that crime."). Kravtchouk is also wrong to equate the location of the renewal application's filing with geographical jurisdiction for charges based on that filing. As discussed previously, while New York law provides for geographical jurisdiction "in any county in which such instrument was executed," N.Y. Crim. Proc. Law § 20.40(4)(k), it also provides for geographical jurisdiction where the "conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein." *Id.* at § 20.40(2)(c).

claim were solely rooted in Kravtchouk's arrest and prosecution for the false filing charges. However, with respect to the alleged false report to the DMV, more detailed analysis is required.

At the outset, neither absolute prosecutorial immunity, nor the Eleventh Amendment, shield Palvia. With regard to immunity, the critical inquiry is whether her report to the DMV "'reasonably' fall[s] under the rubric of the prosecutor's function as an advocate." *D'Alessandro v. City of New York*, 713 Fed. App'x 1, 5 n.6 (2d Cir. 2017) (summary order) (quoting *Giraldo*, 694 F.3d at 165). Palvia has provided no basis for concluding that in reporting Kravtchouk to the DMV she was acting in her role as an advocate. *See id.* at 5 ("A prosecutor wears many hats. . . . But she only receives absolute immunity when she acts as an 'advocate.'"). As the official seeking immunity, it is Palvia's burden to show she is entitled to absolute immunity. *See Buckley*, 509 U.S. at 269. At this stage, Palvia has failed to establish that she is entitled to absolute immunity with respect to Kravtchouk's retaliation claim.[6] Similarly, where a suit centers on an assistant district attorney's non-prosecutorial functions, the Eleventh Amendment provides no immunity. *See D'Alessandro*, 713 Fed. App'x at 8.

Kravtchouk's retaliation claim is brought under the ADA, Section 504 of the Rehabilitation Act, the NYSHRL, and the NYCHRL. (Am. Compl. at ¶ 259.) To bring a claim under Section 504 or the ADA, Kravtchouk must establish that (i) he was engaged in protected activity; (ii) the alleged retaliator knew that he was involved in protected activity; (iii) an adverse decision or course of action was taken against him; and (iv) a causal connection exists between the protected activity and the adverse action. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (quotation omitted); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000)), *superseded by statute on other grounds by* 42 U.S.C. §

---

[6] Under some circumstances, prosecutors and police officers may be entitled to qualified immunity. Neither Palvia nor Ramos rely on qualified immunity here.

12102(3)(A). The elements of NYSHRL and NYCHRL retaliation claims are nearly the same, *see Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 69–70 (S.D.N.Y. 2016), with the primary difference being that state and city laws have a broader definition of disability. *See Bonnen v. Coney Island Hosp.*, No. 16-CV-4258 (AMD) (CLP), 2017 WL 4325703, at *12 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, No. 16-CV-04258 (AMD) (CLP), 2017 WL 4296733 (E.D.N.Y. Sept. 26, 2017) (explaining that the "elements to find disability discrimination under [NYSHRL and NYCHRL] generally track those set forth in the ADA" and that "[t]he main difference between the analysis required under the ADA as compared to the NYSHRL and NYCHRL is the standard used to define 'disability'" (citations omitted)); *see also Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009) ("The only major difference in the analysis of disability discrimination under the state and city statutes as compared to the ADA is that the definition of disability under the former is considerably broader than the ADA definition, at least before the amendments of 2008."). At this stage, the ADA, Section 504, NYSHRL, and NYCHRL claims can be analyzed together. [7]

To plead the first element of a retaliation claim, Kravtchouk must allege that he was engaged in protected activity in protest to or opposition to statutorily prohibited discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85; *see also Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002)

---

[7] Palvia argues that Kravtchouk's state law claims should be dismissed for failure to file a notice of claim. (Mot. to Dismiss at 21–22.) The only state law claims for which Palvia is not entitled to immunity are Kravtchouk's retaliation clams brought under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (Am. Compl. at ¶ 259.) Although proceeding under New York state and municipal law, these are not tort claims, and therefore not subject to New York notice of claim requirements under General Municipal Laws §§ 50–e and 50-i. *See Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135, 146 (N.D.N.Y. 2011) ("Plaintiffs were not required to comply with the Notice of Claim requirements set forth in N.Y. Gen. Mun. Law §§ 50–e and 50–i before asserting in this action their state law claims under NYSHRL and NYCRL.").

(explaining that protected activities include informal complaints to management of discrimination as well as the filing of federal and state administrative charges); *Sumner v. U.S. Postal Service*, 899 F.2d 203, 208–09 (2d Cir. 1990) (explaining in the context of Title VII that protected activity includes "informal protests of discriminatory employment practices . . . [and] protesting against discrimination by industry or by society in general."). Palvia complains that Kravtchouk "fails to offer any plausible facts in support of the notion he was prosecuted or otherwise unlawfully targeted because he was hearing impaired." (Mot. to Dismiss at 18.) This misconstrues Kravtchouk's allegation. Kravtchouk does not allege he was targeted because he was hearing impaired, but rather because he asserted his rights as a deaf person under the anti-discrimination laws in defending against the DWI charge. (Am. Compl. at ¶ 258.) Specifically, Kravtchouk alleges that he "insisted that he would defend the [DWI] case and assert the discriminatory conduct to which he had been subjected by defendants . . . as a defense to the criminal charge." (Am. Compl. at ¶ 51.)

However, Palvia's complaint is well-taken in another sense. Kravtchouk's amended complaint is not a model of clarity. It does not provide any detail about how or when he raised or threatened to raise anti-discrimination arguments in defending against the DWI charge. Thus, the Court cannot assess whether his conduct falls within the definition of protected activity. Kravtchouk's complaint is similarly deficient with regard to pleading the requisite causal connection between protected activity and any adverse action taken in retaliation.[8]

---

[8] Ramos and Palvia argue that reporting Kravtchouk to the DMV could not constitute adverse action under anti-retaliation statutes because, at most, it constituted strict enforcement of the laws following Kravtchouk's DWI arrest. (Reply Supp. Mot. J. Pldngs. at 10-11; Mot. to Dismiss at 18.) Yet Palvia and Ramos have failed to establish that they were, indeed, enforcing the law when they allegedly reported Kravtchouk to the DMV as an unsafe driver. As Kravtchouk argues, there is no law requiring a report be filed with the DMV following a DWI arrest. (Pl.'s Opp'n to Mot. J. Pldngs. (Doc. No. 69) at 21–22.) Furthermore, Kravtchouk alleges that Ramos and Palvia reported Kravtchouk's deafness, not just his DWI arrest, as a reason he was an unsafe driver. (*Id.* at 21; Am. Compl. at ¶ 73.) Ramos and Palvia have pointed to no laws or established procedures under which deaf drivers are reported to the DMV for further scrutiny – after DWI arrests or otherwise. On the record before the Court, Ramos and Palvia have

Kravtchouk's amended complaint is deficient in another regard: he fails to sufficiently plead that the adverse action – here, the report to the DMV – was causally connected to his protected activity. He alleges only on "information and belief" that it was Palvia and/or Ramos who contacted DMV, resulting in Kravtchouk being summoned to the DMV to submit proof of his fitness to drive safely. And Kravtchouk alleges that the retaliatory conduct occurred "sometime prior September 28, 2015," when Kravtchouk received notice to report to DMV. (Am. Compl. at ¶ 73.) While adverse actions close in time to a plaintiff's protected activity will suffice to plead retaliation, *see Treglia*, 313 F.3d at 720, these allegations are vague, particularly when compounded with his failure to specify the nature and timing of his protected activity. Kravtchouk will be given an opportunity to re-plead these allegations.

4. **Leave to file a second amended complaint**

Otherwise, Kravtchouk's general request to file a second amended complaint against Ramos, the City, and Palvia is denied. (Pl.'s Opp'n Mot. J. Pldngs. at 23; Pl.'s Opp'n to Mot. to Dismiss at 38.) While courts must "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), courts may deny leave to amend where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). Kravtchouk's false arrest, malicious prosecution, § 1983, and § 1985 claims are barred on several legal grounds, including prosecutorial and Eleventh Amendment immunity, and the fact that probable cause supported Kravtchouk's arrest and prosecution. None of these deficiencies could be cured by additional pleading. Kravtchouk does not dispute this: in seeking leave to amend, he offers no proposed pleading and fails to identify any deficiency a second amended

---

not shown they were strictly enforcing the law by reporting Kravtchouk to the DMV. And such a report would likel deter an individual of ordinary firmness, situated similarly from engaging in the protected activity, thus constituting an adverse action. *See Zelnik v. Fashion Inst. Of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006).

complaint would cure. Because further amendment would be futile, other than to allow Kravtchouk the opportunity to establish a retaliation claim related to the DMV report, Kravtchouk's request for leave to amend is denied.

## CONCLUSION

For the reasons stated herein, the motions of defendants Palvia, Ramos, and the City of New York are granted. Kravtchouk's federal and state claims for false arrest, malicious prosecution, and conspiracy against these defendants are dismissed. Kravtchouk's retaliation claim is also dismissed, with leave to replead with respect to retaliation based on the report to the DMV.

As there are parties and claims not affected by these motions, the parties shall proceed to discovery under the supervision of the assigned magistrate judge.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2019

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge